The last case this morning is MasterObjects v. Meta Platforms, 2023-1097. Mr. Atkinson, when you're ready. Thank you. Good morning, Your Honors. If it may please the Court. Meta and the transferee judge say that the transferee judge claimed construction had to be revisited in this case. Given that there were no new facts and that there was no new law, and the plain black-and-white claim dispute that had been resolved by Judge Albright, that's the Texas Transferor Court, basically their argument is, since there was no explanation given by the Texas judge, they could not apply a clearly erroneous standard in order to apply law of the case or reconsideration principles. But here, that standard does not require an explication. It's not a type of standard that requires some sort of explanation. The Supreme Court itself was very clear on this in Christensen. In that case, although not a patent case, this Court did not provide an explanation as to its transfer, its decision on subpoena jurisdiction. Despite that fact, the Supreme Court said the standard is simply, is it plausible? You do not need it. Do you agree that if this case had stayed in the Western District of Texas before Judge Albright, he would have been free to alter his claim to destruction as the case progressed? It depends on the circumstances, Your Honor. As a general matter, no. I believe that Judge Albright can- You don't think that he would have had the ability to alter his claim to destruction if it stayed in front of him? To be clear, if it was with respect to something that just wasn't to clarify. So if it was with an issue he had already resolved, for example, if he had found that Meadow was still arguing on the synchronous term, that server initiation was part of his construction, even though he rejected that issue by adopting mask-to-objects construction, he would have been free to add that additional point, although he wouldn't have to. Much like the District Court did in the Defension case, he could have simply said, you're not allowed to make that argument to the jury. I've already decided it. So in that context, yes. But if he were to revisit it totally anew, this was just, he was going to change his mind. He was like, you know what? I've decided I disagree. I don't agree with mask-to-objects as to what query message means. That he could not do, absent new facts or new law, or he himself deciding that his construction was clear erroneous. He could decide that, and he could simply explain then that that is what happened. Okay, so if he thinks that he's made an error in his construction, you're at least admitting that he would be able to fix that error. He wouldn't need to just ride an erroneous construction all the way through the case. That's correct. If he himself believes that the error was clearly erroneous, he's allowed to fix that construction. If that's in fact what Judge Olson believed, if he'd actually applied that standard, and he found applying the clearly erroneous standard, I believe that Judge Albright clearly got it wrong, his decision wasn't plausible, he too would have been allowed to then revisit Judge Albright's decision. But that didn't happen here. The standard was simply not applied. And the standard itself is very important. It's not just important with respect to the orderly administration of justice as well as the self-expectation of the parties. For example, this case proceeded through fact and expert discovery on the Judge Albright's constructions on the eve of trial is when matters got upset. But it's also very important to the public's perception as to the fairness of the judiciary. So here, for example, to the public, it looks like if a patentee or accused infringer, if there's no new facts, no new law, which everyone is lucky enough to be in California or Texas, not understanding precedence, not understanding the actual facts of the case, that is what determines the outcome of the case. So this is a very important doctrine that should be adhered to, and that's why the case should be remanded and the law of the case should apply. So it's not just some sort of, well, is it unfair to the parties? It has broad implications for the court system than that. And this law of the case principle has not just been applied in cases like Christensen or in Texas American Oil, which are non-patent cases by this court, but this court has followed these principles in many of its own decisions. For example, in the Toro decision, this court applied the law of the case to itself. It seems unfathomable that this court believes that it cannot upset its own claim constructions without applying the clearly erroneous standard, but yet the district courts are free to do that themselves. That's just not something that would be applicable in the case law. And this is why MED has not been able to find a case on point where this court has said that its standard on revisitation of claim constructions is meant to upset or depart from the doctrine of law of the case or reconsideration of principles. It just works in line with it. It's not some exception. It is just in some circumstances they are clearly exceptional that, for example, there is a legitimate claim construction dispute or the claim constructions were made during a preliminary injunction, for example. In that situation, it would have been as the case developed. There would have been new facts. There would have been new evidence developed. And then, yes, you would revisit the case because there is a new argument presented to you, but that is not this case, Your Honors. What is your best intrinsic evidence in support of your preferred construction of the term query messages? Our best intrinsic evidence with support to query message is the use of the actual term query message in conjunction with sending an extant string in the specification. So that's when it says you send in the service. Do you want to give me appendix page and column line? Sure. Okay. It is going to be appendix page. Which pattern are you looking at, too? It's pattern number 024, Your Honor. And it's going to be on column 19, appendix page 8454. And it's a paragraph that begins with line 15, ending in line about 35. And it's the one that begins at step 407. The user types a third character C into the Questlet. And then moving down to about line 27, it says, eventually the server quester receives notice of the third character appended to the input buffer and sends a new query ABC to the service. And if you go to higher up on the same column, 19, the first line, one or two, it says query message A and B to the service. So there, Your Honor, you can see that here the server sends not just the change C, but the change ABC onto the service. That's also reflected in Figure 4, which it might actually be easier to see it there than it is to see it in the written words of the specification. So I would say that's our best intrinsic evidence. And the second best intrinsic evidence on that point, Your Honor, is just the plain breadth of many of the specification's references to what is sent between the client and the server. For example, in the abstract of the O2-4 itself, which is appendix page 8425, it talks about sending a character-by-character string. A character-by-character string does not exclude sending an extant string or sending just the changes. It's actually more obvious that that would be a partial query string. A partial query string generally consists of multiple characters, while just the change normally but not always consists of one character. Send a character-by-character string implies multiple characters. So basically what Meda does is say that despite these very plain words of the claims or this plain breadth, that one single sentence that is embodiment-specific and permissive, and that's their allow instead of sentence, disavows. Do you agree that the language you point us to in column 19 is really talking about sending characters on the back end? It is, Your Honor. It is talking about sending characters on the back end. That is correct. As opposed to from the client to the server? That is correct, yes. Okay. But it is the only use of the term query message in the entire O2-4 specification. Frankly, Your Honor, it's ridiculous to think that a person of skill reading this would say, Aha, you used the term query message in conjunction with sending an extant string, but I am to understand in other situations, hey, you're not supposed to use an extant string. That's just not plain. There's no plain manifest intent based on this specification that anyone would conclude that. Which I guess, to use a simple sort of analogy, what Meda is saying is if I had a patent that said, use a boat on a body of water, and I had many same specifications saying that, and there was one sentence that says, you may use a boat on a pond opposed to on a lake, that a boat captain would be, okay, I can't use this on a lake. That's just, it's absurd. There's no clear manifest intent being expressed in that. It's not something that someone would take away from a statement saying, allow instead of a one permissive statement, given the broad statement such as send single by single character or send something in the specification. On the asynchronous term, your Honor, the best evidence is that sending just the changes doesn't exclude sending multiple characters at a time. Sending just the changes? Mm-hmm. Sending just the changes does not, yes, I will concede that sending just the changes does not exclude sending multiple characters. In most instances, you'd be sending one character, but there are situations where you could be sending multiple characters and it'd be just the change that is correct. But again, Meda hasn't pointed to any evidence other than their one sentence about allow instead of on just the changes. There's no other sentences in the specification discussing that. On the asynchronous construction, the best intrinsic evidence probably comes from the 024, sorry, the 073 patent. And that's going to be on page 30, sorry, on appendix page 8598, column 34, line 17 to 21. And there it says, a full-page quest for employment can also be used to provide a scale-backed search interface for those browser devices that do not allow asynchronous communication. That is, browser devices that do not support Flash, AJAX, or similar technologies. On page 15, which is also appendix page 15 of his order, judge also said that AJAX is excluded from his construction that is the server initiation construction of the patents. That can't be correct under the 073 specification because AJAX clearly is a form of asynchronous communication. Similarly, on page 8597 in column 32, it says, lines 57, 62, it says something very similar. There it says, figure 24B shows a screenshot of a webpage specifically designed to use AJAX rather than Adobe Flash. What were the line numbers? I'm in column 32. What were the line numbers again? It should be 57 to 62. Counselor, you're into your bottle time. You can save it or continue. If there are no further questions, I will save it. Thank you. Mr. Holmgren. Thank you, Your Honor. May it please the court. In this case, each of the three independent grounds for summary judgment and for affirmance ultimately originate from what the common specification, common to all four patents in the case, tells the public about the scope of the invention and about the meaning of terms and claims. In its arguments, the common thread through the briefs and some here today is that Master Objects tries to distance itself from what it told the public this invention was. Why wasn't the court in error regarding collateral estoppel? Weren't the claims in the context different? The claims have some minor changes, but ultimately the issue here is exactly the same as the issue in the Google case. So here the question is, does the statement about the protocol of the present invention, the fact that it sends just the changes, does that limit the scope of the invention and therefore the claims? That's the question here today, and that is exactly the question that Judge Hamilton answered in the Google case. In that case, she says, and it's at page 12 of her opinion, she finds that that statement in the common specification, and again, that was as to the 529 patent, but it's the same specification in each of these patents here, that that statement was made about the invention, and she cites the trading tax and to Honeywell, showing that what she's finding is that that statement about the invention limits the scope of the claims. Now, to be sure, years later, in an effort to get around that Google decision, Master Objects made some changes to the claims here. It points out in its briefing some of the differences, but it fails to note the similarities. So, for example, in the exemplary claim, the claim that Master Objects identified as exemplary in this case, claim one of the 024 patent, that claim continues to use lengthening string. It continues to refer to additional characters, and the message that is being sent from the client to the server, that query message in this case, is performing exactly the same function as the messages that issue in the Google case. It's sending information from the client about what the user is typing to the server. Even if we disagree that collateral estoppel is applicable, just based on the intrinsic record alone, do you believe that that is sufficient to support up your construction of query messages? Yes, it is. It absolutely is. And that's because the statement, the specification, speaks to the present invention. The protocol of the present invention, it says, sends just the changes from the client to the server. And under the case law, whether it's Honeywell, whether it's Trading Technologies, whether it's others, that's sufficient to limit the scope of the invention, and therefore the claims. Yes, Your Honor. I appreciate that you were looking at me, knowing that I wanted to ask you a question. How do we know that that's about the invention as a whole, as opposed to about a specific embodiment, in terms of the language in that column? We see that in the way that that sentence, or that portion of the sentence, is structured.  The protocol of the present invention provides a number of messages that allow the client, Questor, to send just the changes to the input buffer, instead of sending the entire input buffer. So what that tells us is two things. One is it speaks to the present invention, the protocol of the present invention. So it tells us what functionality that has. And then it also tells us how that functionality is implemented in a specific embodiment, the client, Questor. And it tells us the relationship there. The protocol of the present invention allows the embodiment to operate in that way. And so that tells us, essentially, it enables the specific embodiment. And so the argument that we hear from master objects, that, well, this is just talking about the Quest object's embodiment, is not true to the statement in the specification. Didn't the PTAB and earlier district court decisions go the same way on claim construction as the Western District? So the earlier district court cases did not address this issue directly. The PTAB did, in a preliminary construction, applying a different standard. So it was construing the terms there under the broadest reasonable interpretation standard. And ultimately, in its final written decision, did not adopt this construction. Of course, if it did, that construction's also not binding. And so, as to the PTAB, that's the situation. As to the Western District of Texas, it did adopt master object's proposed construction, at least preliminarily. The court emailed a set of constructions. And then after the hearing, issued a minute order saying that it had stayed with the preliminary constructions, but never explained its reasoning. And so, it's unclear why the Texas court had come to that construction in its analysis. Do you have a response to opposing counsel's arguments regarding ability to change the construction between when it was in the Western District and then it was in the Northern District of California? And I heard some law of the case arguments. I just want to know your general response to some of the statements that were made. Yes, Your Honor. We do. So, master object's referenced Christensen. They cite this in their briefs. They actually say in their reply brief that we didn't respond to it. That's not accurate. We addressed it in our red brief at page 54. Fundamentally, they misread Christensen. So, what Christensen says is, quote, a court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance. So, that's the power of the court. And then it goes on to give some abstract examples of when a court might exercise that discretion. And so, here, consistent with, here in claim construction, consistent with that power, this court has acknowledged that district courts are free to conduct rolling claim construction. They may and sometimes must revisit, alter, modify, expand on their constructions. And as a practical matter, in cases around the country, in courts around the country, case after case, judges do just that. And we heard from opposing counsel, I believe, in the end, that Judge Albright, had he kept this case, would have been able to alter his construction if he believed that it was wrong. And, of course, he could. That happens every day. What we see in the law of the case cases are situations, typically, where judges have either applied that construction to reach a liability decision, that case goes up on appeal, comes back down for damages, and now somebody on appeal of damages wants to revisit claim construction. Or we see a dispute between two courts or a difference of opinion between two courts about jurisdiction. And so we see changes in a transfer decision that bounce from court to court for two years without resolution, where ultimately the Supreme Court said, look, somebody's got to make a decision, go forward. That's not this case. What this case is, effectively what we're hearing from the other side is, merely because this case was transferred, Now, Judge also didn't have the ability that Judge Albright did to revisit and change the construction. And that just doesn't track the law. There are also a couple of elements. And, of course, we see it in the cases that are cited. District courts sometimes do treat claim construction as a reconsideration issue. When in their discretion, that feels appropriate. And when they do that, they apply the reconsideration standard. Judge also has done that in prior cases. But here on the procedural posture of the case and his analysis of the underlying evidence, he didn't feel that was appropriate. He felt it was appropriate to weigh in. Can we turn to the asynchronous constructions as well? And just so I make sure I'm understanding what was happening procedurally in the Northern District of California, did the Northern District of California ultimately adopt a construction that kind of combined up the one proposed by Master Objects and by META? The way I understood Judge Alsup's opinion in California was that he applied the construction proposed by Master Objects and adopted preliminarily by the Texas court. But he also looked at that construction in light of the intrinsic evidence. So he didn't have the benefit of that analysis. So he did his own analysis. And he ultimately applied the final construction. He says that in his order that although he could change that construction, he chose to simply apply it. So I'm not sure if I have the answer. So is it a combination of a construction that META proposed and Master Objects proposed that Northern District of California ultimately adopted on that term? I'm sorry. I misunderstood Your Honor's question. No, this is Master Objects' construction. So in the court in Texas, Master Objects proposed two different constructions. So one of the constructions it proposed is the one ultimately that governed this case, which was each side of the communication is free to communicate without waiting for the other side. The other construction that Master Objects proposed was that each side of the communication can communicate with the other side in a non-blocking manner. Now that non-blocking construction, that reflects the arguments we've seen in the briefing. Essentially that all asynchronous means is that the two sides can send messages, talk over each other, in other words. But the construction that was actually adopted, the one proposed by Master Objects, requires each side of the communication be free to communicate without waiting for the other side. And so what that means is that... And that's what happened... Oh, I'm sorry. I do... Okay. I think that's what happened. I thought in Texas, I thought it was... I'm just trying to get my facts straight. So in Texas, I thought it adopted the Master Objects construction on asynchronous. And then I thought what was happening, and obviously correct me if I'm misstating this, was that then in California, that construction was there, but then there was a further explanation that maybe appended on something that Meta had proposed. Is that right, or am I misstating that? It's roughly right, but it's a little nuanced. So Master Objects proposed the two different constructions in Texas, and then we proposed a different construction altogether, one that just reflected what the definition and the specification says. The Texas court picked this without waiting for the other side construction between the two that Master Objects offered. So that was the state of the case when it came to California. What Judge Alsop did is he said, I have the power to rewrite that or revisit it, but I'm not going to. I'm going to apply that construction. But he did look into what does the specification say about asynchronous? What are the definitions? What does it tell us? To better understand that construction. Now Master Objects' argument is, well, the court in Texas basically resolved this question about initiation. Must the server be able to initiate communication? But that's actually not clear, because what the Texas court did was simply pick between the two constructions Master Objects proposed, which are different from each other. And we don't know why he did it, and we don't know what the reason is. So where this idea that Judge Alsop appended or modified that construction comes from is from their argument. But what he actually did is he applied the construction that they proposed. He definitely analyzed it and its implications in light of what the specification said. Because what that construction requires is that the server be able to communicate without waiting for the client. Which means it can start a conversation. It can respond multiple times to the same request. So there may be one request, and it may answer once, and then it may answer again and again. The server, under Master Objects construction, does not have to wait for the client. And so where that comes in, and where initiate comes in, is because the specification defines asynchronous as both sides can communicate, in that both the client and the server can initiate communications at any moment in time. That's what the specification says. And the implications of the construction Master Objects proposed and that the court ultimately adopted are that the server is free to send messages, initiate communications in other words, without waiting on the client. And because there's no dispute that MetaSystem cannot do that, that drove summary judgment. Counsel, you appear to be coming to a close just as your time. Very well. Unless the court has questions, we will submit the case. Thank you. Thank you. Mr. Atkinson has some rebuttal time. Thank you, Your Honor. First, Your Honors, on the question of what Judge Alston decided by asynchronous, in his order on page 11, he makes it clear that he added back in Meta's construction into Master Objects construction. He says, he says, all the claims of suit require synchronous communication between the server and client, and further, as in Meta further contends that asynchronous means that the server must be able to initiate communications. This order agrees. And it is clear that this was the only issue before Judge Albright. It is clear from the parties' briefs that this was the only issue. It was a server initiation issue. You can see on the very first line of Master Objects claim construction briefing in Texas, which is at 1136. You can see it again when Master Objects says in its claim construction briefing at 2158, this is a single issue. And you see it again in Meta's briefing on page 364 when Meta says that Master Objects construction does not include the server initiation requirement. So what I stated seems roughly accurate. Is that fair? Roughly accurate. Even more so, I would say, that while Judge Allsup was saying he was leaving Master Objects construction in place, he wasn't actually reading in extra. He adopted Meta's, he basically construed Master Objects construction as Meta's construction. On the issue of the query master's term, I did want to point out some additional, very good, intrinsic record evidence, and that's going to be on the 073 patent on page 859 of the appendix, column 31, lines 5 to 48. There it discusses an embodiment that uses a user session but not session-based. Session-based meaning a server tracking embodiment. And here it's saying you could have this without a server tracking embodiment. And there the client would send all of the information. And you can see that on lines 20, beginning, instead, the client system packages each request into a full communication packet that contains all the necessary information for the server object to do its work. The server object... Apologize, what page were you on when you were just talking? Yes, I'm on appendix page 8597, column 31. And I'm on line 20. Instead, the client system packages each request into a full communication packet that contains all of the necessary information for the server object to do its work. The server object does not remember information. This is critically important as the prosecution history also bears out because the Google court, sort of relating this issue to Estoppel, found that the prior old claim language in the 529 patent required a server that tracks. That was the court's basis and also what MEDEA itself has conceded, as well as Judge Alsup, for their reading of query message. They say that in that embodiment, you have to be able to glue just the changes together. But Heron's specification is making clear that there are embodiments that aren't like that. In addition to the 024 specification itself, it says that server tracking is but one embodiment. So essentially, both MEDEA and Judge Alsup are reading in with no hook for it, this session language that was deliberately deleted from the new patents in the case. Briefly, on Clara Estoppel, your honors are correct, that's a non-starter. The claim language is clearly new. The old language is not there. It makes a material difference in terms of what parts of the prosecution history, as well as the intrinsic record you look at. As to the issues, the out-of-bounds of the specification are not decided. The open E scribe case, which is Trading Tech 2, makes that clear, that what you're saying strongly suggests, for example, does not mean you're deciding the out-of-bounds specification. As you can see, your time has expired. Thank you, your honors. Thank you both for your arguments. The case is submitted. That concludes today's arguments.